## UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | PAUL E. PLUNKETT | Sitting Judge if Other Than Assigned Judge | ARLANDER KEYS |
|---|---|---|---|
| Case Number | 00 C 4308 | Date | March 26, 2001 |
| Case Title | Howard J. Meyer, Jr. v. Southern Pacific Lines, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd-party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) Filed motion of [use listing in "MOTION" box above]

(2) Brief in support of motion due _____

(3) Answer brief to motion due _____ Reply to answer brief due _____

(4) ☐ Ruling ☐ Hearing on _____ set for _____ at _____

(5) Status hearing ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____

(6) Pretrial conf. ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____

(7) Trial ☐ Set for ☐ re-set for _____ at _____

(8) ☐ Bench Trial ☐ Jury Trial ☐ Hearing held and continued to _____ at _____

(9) This case is dismissed ☐ without ☐ with prejudice and without costs ☐ by agreement ☐ pursuant to
☐ FRCP 4(j) (failure to serve) ☐ General Rule 21 (want of prosecution) ☐ FRCP 41(a)(1) ☐ FRCP 41(a)(2)

(10) ☒ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's Rule 36 and 37 Motions to Strike Objections and Compel Answers are granted. Defendant's Motion for a Protective Order is denied. Defendant is ordered to provide proper responses to Plaintiff's discovery by no later than 4/13/01. All matters relating to the referral of this action having been resolved, the case is returned to the assigned judge. AK

(11) ☒ [For further detail see ☐ order on the reverse of ☒ order attached to the original minute order form.]

| | |
|---|---|
| ☐ No notices required, advised in open court. | |
| ☐ No notices required. | number of notices: 4 |
| ☒ Notices mailed by judge's staff. | |
| ☐ Notified counsel by telephone. | date docketed: MAR 27 2001 |
| ☐ Docketing to mail notices. | docketing dpty. initials: mw |
| ☐ Mail AO 450 form. | |
| ☒ Copy to judge/magistrate judge. | date mailed notice: 3/26/01 |
| vkd courtroom deputy's initials | Date/time received in central Clerk's Office | mailing dpty. initials: vkd |

ED-7
FILED FOR DOCKETING
01 MAR 26 PM 5:03

Document #
26

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HOWARD J. MEYER, JR., Individually and as Independent Administrator of the Estate of JEFFREY L. MEYER, Deceased, *et al.* | ) ) ) ) ) | No. 00 C 4308 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Magistrate Judge |
| | ) | Arlander Keys |
| SOUTHERN PACIFIC LINES, a foreign corp. formerly d/b/a SOUTHERN PACIFIC TRANSPORTATION COMPANY, now d/b/a UNION PACIFIC RAILROAD COMPANY; SPCSL CORPORATION, a foreign corp.; NATIONAL RAILROAD PASSENGER CORPORATION, a foreign corp., d/b/a AMTRAK; and LARRY ASHLEY, | ) ) ) ) ) ) ) ) ) ) ) ) | Judge Paul E. Plunkett |
| | ) | |
| Defendants. | ) | |

**DOCKETED**

MAR 2 7 2001

## MEMORANDUM OPINION AND ORDER

Before the Court are Plaintiff's Rule 36 and 37 Motions to Strike Objections and Compel Answers to Requests to Admit and Interrogatories Directed to Defendant, National Railroad Passenger Corporation, a foreign corp., d/b/a Amtrak (hereinafter referred to as "Amtrak"). In response, Amtrak filed a Motion for a Protective Order and a Response to Plaintiff's Rule 36 and 37 Motions. For the reasons set forth below, Plaintiff's Rule 36 and 37 Motions are granted, and Amtrak's Motion for Protective Order is denied.

## BACKGROUND

This controversy involves a claim for damages arising from a wrongful death lawsuit concerning a collision between a high-speed Amtrak train and Plaintiff's decedent's Ford Bronco. Plaintiff's decedent, Jeffrey L. Meyer, along with two of his passengers, were killed in this accident.[1] According to Plaintiff, the railroad crossing - where the accident occurred - lacked automatic gates or flashing lights at a location that served a high volume of high-speed rail traffic. It is Plaintiff's theory, in part, that Amtrak was negligent, and wilful and wanton, in failing to provide adequate warning devices at the railroad crossing.

On October 13, 2000, Plaintiff served Amtrak with Interrogatories and Requests to Admit. On November 13, 2000, Amtrak responded to Plaintiff's Interrogatories by objecting to 27 of the 30 Interrogatories, and by refusing to answer by objecting to each and every one of Plaintiff's Requests to Admit. On November 15, 2000, Counsel for Plaintiff sent Counsel for Amtrak a Rule 37.2 letter attempting to resolve the parties' differences with regard to the discovery requests. On November 28, 2000,

---

[1] The instant case has been consolidated with two additional matters involving Paul Aaron Farkus and Daniel Elwell, who were also killed in the collision.

Plaintiff's counsel contacted Amtrak's counsel, again, in another unsuccessful attempt to resolve the discovery disputes. Consequently, on February 16, 2001, Plaintiff filed the instant Rule 36 and 37 Motions to Strike Objections and Compel Responses to the discovery requests. On March 5, 2001, Amtrak filed its Motion for Protective Order[2] and Response to Plaintiff's Rule 36 and 37 Motions. On March 13, 2001, Plaintiff filed its Reply.

## ANALYSIS

A party may file a motion to compel discovery under Rule 37 of the Federal Rules of Civil Procedure ("FRCP") where another party fails to respond to a discovery request, or where the party's

---

[2] Amtrak specifically prays for the entry of an Order that (1) on or before February 2, 1994, Amtrak did not owe Plaintiff a duty to have a policy, program, or people in place to independently evaluate the Millsdale Road crossing for the purpose of determining whether there was a need for additional warning devices at the crossing; (2) barring Plaintiff from propounding any oral or written discovery to Amtrak concerning the matters alleged in Counts II, V, and VII (the wilful and wanton claims); (3) barring Plaintiff from conducting discovery on matters other than the Millsdale Road crossing, the train operation, and the facts and circumstances existing at the Millsdale Road Crossing on or before February 2, 1994; (4) denying Plaintiff's Motion to Strike Amtrak's Objections and Responses to Requests to Admit Facts; and (5) denying Plaintiff's Motion to Strike Amtrak's Objections and Answers to Interrogatories. As explained in more depth *infra*, because Amtrak has a common law duty to provide adequate warning devices at its railroad crossings, and because Plaintiff's Requests to Admit and Interrogatories seek relevant, non-privileged information, Amtrak's Motion is denied.

response is evasive or incomplete. Fed.R.Civ.P. 37(a)(2-3). FRCP 36(b) requires that a party upon whom a request to admit has been served "shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter." Fed.R.Civ.P. 36(b). If the court determines that an answer to a request to admit does not comply with the requirements of this rule, it may order either that the matter is admitted or that an amended answer be served. Fed.R.Civ.P. 36(a).

The FRCP provide a court with broad discretion in resolving discovery disputes. *Bobkoski v. Board of Educ. of Cary Consol. School Dist. 26*, 141 F.R.D. 88, 90 (N.D. Ill. 1992). A motion to compel discovery is granted or denied at the discretion of the trial court. *Wilstein v. San Tropai Condominium Masters Ass'n*, 189 F.R.D. 371, 375 (N.D. Ill. 1999) (citation omitted). In ruling on motions to compel discovery, "courts have consistently adopted a liberal interpretation of the discovery rules." *Id.*

Under FRCP 26(b)(1), "parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery, or to the claim or defense of any other party ..." Fed.R.Civ.P. 26(b)(1). A request for

discovery "should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *AM Intern., Inc. v. Eastman Kodak Co.*, 100 F.R.D. 255, 257 (N.D. Ill. 1981) citing 8 Wright & Miller, Federal Practice and Procedure, Civil § 2008 (1970). Thus, courts commonly look unfavorably upon significant restrictions placed upon the discovery process. *Allendale Mut. Ins. Co. v. Bull Data Systems, Inc.*, 152 F.R.D. 132, 135 (N.D. Ill. 1993). The burden rests upon the objecting party to show why a particular discovery request is improper. *E.E.O.C. v. Klockner H & K Machines, Inc.*, 168 F.R.D. 233, 235 (E.D. Wis. 1996).

Significantly, in the case *sub judice*, Amtrak – the objecting party – has failed to show why answering Plaintiff's Interrogatories and Requests to Admit is improper. Rather, Amtrak refuses to adequately respond to the discovery by disingenuously, and incorrectly, arguing that it has no legal duty to provide adequate safety devices at railroad crossings, because the duty belongs exclusively to the State of Illinois and/or has been preempted by federal law.[3]  Therefore, according to Amtrak,

---

[3] Amtrak also argues that, because Defendant SPCSL Corp. is the only Defendant with a property interest in the railroad

(continued...)

Plaintiff's discovery requests seek irrelevant information, in violation of Rule 26(b)(1) of the FRCP. Based on these arguments – which border on the frivolous – Amtrak has refused to satisfactorily respond to Plaintiff's discovery requests.

The Court emphasizes that Amtrak has repeatedly argued, unsuccessfully, on numerous occasions that, because of federal and/or state preemption, railroads do not have a common law duty to provide adequate railroad crossings. This is an inaccurate statement of the law at best, and Amtrak relies on selective passages and wording of cases to advocate this untenuous position. For instance, in Amtrak's Response, it states, in a bold heading, the following misleading statement of law: "In enacting the Federal Rail Safety Act and amending the Highway Safety Act and in promulgating rules pursuant to those statements, Congress and the Secretary of Transportation have preempted Plaintiff's common law claims." (Amtrak's Response at 6.)

Incredulously, Amtrak relies on the Supreme Court case *Easterwood v. CSX Transp., Inc.*, 507 U.S. 658, 664 (1993) for this

---

[3](...continued)
crossing in question, and because Amtrak was merely the entity operating the train, it has no legal duty to provide adequate warning devices at its crossings. As with Amtrak's other erroneous arguments based on preemption, this argument – as will be explained *infra* – is unfounded.

proposition, and cites selective passages from this case. However,
a thorough reading of this case belies Amtrak's position. Indeed,
in *Easterwood,* the widow of a truck driver killed in a railroad
crossing collision sued the defendant railroad alleging, in part,
that the railroad was negligent for failing to provide adequate
warnings at the crossing. As in the case *sub judice*, the defendant
railroad argued, unsuccessfully, that the Federal Railway Safety
Act of 1970 ("FRSA"), 49 U.S.C. § 20101 *et seq.* (West 2000), the
Highway Safety Act, 23 U.S.C. § 101 *et seq.* (West 2000), and the
regulations promulgated thereunder, preempted plaintiff's common
law claim for negligence with respect to the safety devices at the
crossing. The Supreme Court, finding no federal preemption of
this common law claim[4], specifically held that:

> The regulations of 23 CFR pt. 924 do not of themselves
> support [defendant railroad's] claim of pre-emption.
> These provisions establish the general terms of the
> bargain between the Federal and State Governments: The
> States may obtain federal funds if they take certain
> steps to ensure that the funds are efficiently spent.
> *On its face, this federal effort to encourage the States*

---

[4] In *Easterwood*, the Supreme Court found that the FRSA and
federal regulations adopted by the Secretary of Transportation
did preempt plaintiff's common law claim for negligence with
respect to *excessive speed*. However, with respect to plaintiff's
common law claim regarding inadequate warning devices at the
accident site, plaintiff's state tort claim was not preempted,
for the reasons discussed *infra*.

> *to rationalize their decision making has little to say*
> *about the subject matter of negligence law, because, with*
> *respect to grade crossing safety, the responsibilities of*
> *railroads and the State are, and traditionally have been,*
> *quite distinct.* Before the enactment of FRSA, for
> example, Georgia's authority over grade crossing
> improvements did not excuse a railroad's liability in
> negligence for failing to maintain a safe crossing . . .
> just as a jury finding of railroad negligence bore no
> particular significance on the State's safety efforts
> beyond that which the State wished to give it. *Certainly*
> *there is no explicit indication in the regulations of 23*
> *CFR pt. 924 that the terms of the Federal Government's*
> *bargain with the States require modification of this*
> *regime of separate spheres of responsibility . . . .* In
> fact, the scheme of negligence liability could just as
> easily complement these regulations *by encouraging*
> *railroads – the entities arguably most familiar with*
> *crossing conditions – to provide current and complete*
> *information to the state agency responsible for*
> *determining priorities for improvement projects in*
> *accordance with § 924.9.*

*Easterwood*, 507 U.S. at 667-68 (emphasis added). The Supreme Court

ultimately concluded that the plaintiff's state tort negligence

claim for inadequate warning devices was not preempted, because the

warning devices, for which federal funds had been obtained, had not

been actually installed where the accident occurred. *Id.* at 671-

73.

The Seventh Circuit (as well as other circuits) subsequently

reaffirmed and clarified the reasoning expounded in *Easterwood*.

In *Thiele v. Norfolk & Western Ry. Co.*, 68 F.3d 179 (7th Cir.

1995), the Seventh Circuit held that preemption is only triggered

when federally funded warning devices at a specific crossing are fully installed and operational.[5]  *Id.* at 182.  Specifically, *Thiele* states: "*Easterwood* thus instructs that federal financial participation in a railroad crossing upgrade is necessary for preemption. . ."  *Id.; see also St. Louis S.W. Ry. Co. v. Malone Freight Lines*, 39 F.3d 864, 866-67 (8th Cir. 1994)(holding that federal financial participation triggers preemption only when warning devices have been completely installed and are operating)[6]; *Waymire v. Norfolk and Western Ry. Co.*, 218 F.3d 773, 776-77 (7th Cir. 2000)(finding preemption when federal funds were used to install the warning devices, and those devices were installed and

---

[5]  The recent Supreme Court case, *Norfolk Southern Ry. Co. v. Shanklin,* 529 U.S. 344 (2000), modified *Thiele* in that passive crossbucks, if federally funded and approved, can serve to trigger preemption. However, this modification is irrelevant to the case *sub judice*, where the question of federal funds and installation of warning devices, at the accident site, are factual issues that need not be addressed at this stage of the litigation, where motions to compel responses to discovery are before the Court.  Furthermore, *Shanklin* reaffirmed the principle that preemption only applies if there are federal funds that participated in the installation of safety devices.

[6]  Significantly, *St. Louis S.W. Ry. Co.* explains: "Before preemption, the public is protected by a railroad's State common-law duty of care.  After installation of federally mandated warning devices, the public is protected by those devices . . . . To encourage prompt installation of federally prescribed warning devices, a railroad's common law duty of care must continue until those devices are installed."  39 F.3d at 867.

fully functioning), *cert. denied*, 121 S. Ct. 856 (2001).

Therefore, it is quite clear that federal preemption is only applicable if (1) there has been federal financial participation, and (2) completed installation of warning devices. However, Amtrak, in its Response, merely asserts, unequivocally – with no qualifications – that federal preemption applies to the facts of its case, and, inexcusably, fails to provide the remaining caveat: that federal funds and a complete installation of warning devices are prerequisites before preemption of state common law applies.[7] Certainly, Amtrak knows the full extent of the law in this respect[8], and its failure to accurately inform the Court of the law

---

[7] The language quoted from cases in Amtrak's Response even undermines its position. For instance, in *Sheahan v. Northeast Illinois Regional Commuter R. Corp.*, 571 N.E.2d 796, 799 (Ill. App. Ct. 1991), Amtrak quotes language from this case that "the duty of a railroad at a crossing is to provide warning that a train is approaching." Amtrak then argues that – based on this language – it only had a duty to provide "a warning", but did not have an obligation to implement a program or system of analysis. As explained *infra*, what constitutes an adequate warning is a factual issue. As a defense to this litigation, Amtrak can argue that its duty – whatever it entails – did not involve a duty to implement a program to analyze the devices at each of its crossings. Nonetheless, this defense does not relieve Amtrak of adequately responding to Plaintiff's discovery.

[8] Although there are a myriad of cases where a defendant railroad has asserted preemption, and the courts have scrutinized whether there was federal financial participation in the installation of safety devices, a recent case in Illinois is

(continued...)

– and in fact, actively mislead the Court – borders on the sanctionable. While the Court recognizes the adversarial nature of judicial proceedings and the natural inclinations of parties to present facts and arguments to the Court in the light most favorable to their respective interests, it does expect – and, indeed, places significant reliance upon – the parties to correctly represent the state of the law when, as here, the law is clear.

Amtrak's attempt to shift responsibility to the State of Illinois by state preemption is equally unfounded and misleading. It is unequivocal that, in Illinois, "a railroad has a duty to

---

[8](...continued)
particularly instructive. Although this case is not being cited for its precedential value (in compliance with Illinois Supreme Court Rule 23), this case – at a minimum – illustrates that Amtrak had knowledge (or should have had knowledge) of the correct law concerning federal preemption. In *Isbell v. Union Pacific Railroad Co.*, No. 5-99-0558, 2000 Ill. App. LEXIS 129 (Ill. App. Ct. Jan. 25, 2001), the court rejected the defendant railroad's federal preemption argument, because, while plans for an upgrade of a crossing had been approved by federal law (and federal funds had been used to pay for the preliminary engineering work), the construction of the upgrade had not commenced. The court held that, to find plaintiff's negligence claim to be federally preempted, under circumstances where the upgrade had not yet been installed, would "wreak a great injustice", as a person injured or killed at the crossing would have no legal recourse until the upgrade of the crossing was complete. 2000 Ill. App. LEXIS 129, at * 10. In the case *sub judice*, Amtrak fails to even mention that federal financial participation and a completed installation of devices are necessary prerequisites for federal preemption under the FRSA.

provide adequate warning devices at its crossings." *Espinoza v. Elgin, Joliet, & Eastern Ry. Co.*, 649 N.E.2d 1323, 1329 (Ill. 1995); *see also Lindquist v. Chicago and Northwestern Transp. Co.*, 722 N.E.2d 270, 276 (Ill. App. Ct. 1999)(reaffirming that a railroad has a duty to provide adequate warning devices at its crossings). Plaintiff's Reply does an admirable job of explaining the over one hundred year history of railroads trying, unsuccessfully, to shift the responsibility of safety at railroad crossings to the states. The Court finds that it does not need to repeat this history, and instead focuses on the current state of the law in Illinois.

In *Hunter v. Chicago & North Western Transp. Co.*, 558 N.E.2d 216, 221 (Ill. App. Ct. 1990), the court discussed a legislative enactment whereby the railroad was protected from claims of inadequate warnings at its crossings once the Illinois Commere Commission ("ICC") ordered a particular type of warning device at the crossing. The Illinois Commercial Transportation Law provides:

> The Commission shall have power, upon its own motion, or upon complaint, and after having made proper investigation, to require the installation of adequate and appropriate luminous reflective warning signs, luminous flashing signals, crossing gates illuminated at night, or other protective devices in order to promote and safeguard the health and safety of the public. *Luminous flashing signal or crossing gate devices*

-12-

> *installed at grade crossings, which have been approved by*
> *the Commission, shall be deemed adequate and appropriate.*

625 ILCS 5/18c-7401 (West 2001)(emphasis added).

In other words, once the ICC has investigated and approved the installation of a particular type of device – luminous flashing signal or crossing gate devices – its decision is conclusive, and the railroad is prohibited from installing another type of device. As explained in *Espinoza, supra*, the Supreme Court of Illinois held that a conclusive legal presumption is created, which prevents plaintiffs from arguing that a railroad should have installed additional warning devices at its crossings, only when (1) the ICC has investigated the crossing, and (2) the ICC has approved the installation of a luminous flashing signal or crossing gate device.[9]   649 N.E.2d at 1329-30.

Therefore, as with Amtrak's federal preemption argument, discussed *supra*, Amtrak's bold assertion that it has been relieved of its common law duty to provide adequate warning devices at its crossing by the ICC is misleading. As pointed out by Plaintiff, it is only when the ICC has investigated and approved of the installation of certain devices that Amtrak will be relieved of its

---

[9] In fact, the statute requires not only that the devices be approved, but also installed before the devices "shall be deemed adequate and appropriate." *See* 625 ILCS 5/18c-7401.

duty.  Furthermore, Amtrak's assertion that it did not have a property interest in the rail crossing at Millsdale Road - thereby arguing that it did not have a duty to provide adequate warning devices - is equally unavailing.  Gary Schechter, Chief Counsel at the ICC, stated in an affidavit, submitted by Plaintiff,[10] that any railroad operating in the State of Illinois is permitted to fund the installation of warning devices at railroad crossings over which they operate trains, *regardless of ownership of property*. Indeed, besides Amtrak's mere assertion, it provides no legal authority to buttress its contention that ownership of property is determinative of who has a duty to provide adequate warning devices.

Of course, if Amtrak can ultimately prove that federal funds

---

[10] Plaintiff submitted the affidavit of Mr. Schechter after the close of briefing.  Accordingly, the Court gave Amtrak an opportunity to file a Sur-Response to the affidavit.  On March 21, 2001, Amtrak filed its Sur-Response, arguing that Mr. Schechter did not state that Amtrak had a legal duty to install expensive equipment, requiring considerable on-going maintenance and inspection, on another railroad's property, but, rather, merely that Amtrak was not precluded from installing such devices.  Nonetheless, as explained *supra*, the common law in Illinois states that railroads have a duty to provide adequate warning devices at their crossings.  Whether this duty translates into a duty to install expensive equipment - or a duty to have a program to analyze the devices at each crossing - are fact issues.  Amtrak's Sur-Response provides no additional insight in this respect.

participated in the installation of devices at the crossing, and/or that the ICC investigated and approved installation of a luminous flashing signal or crossing gate device, then Amtrak can assert these arguments as a defense to liability.[11]   But, the present Motions before the court concern discovery disputes.   In its refusal to answer Plaintiff's discovery, Amtrak, essentially, puts the cart before the horse.   In fact, even if Amtrak's arguments about federal preemption and the ICC were accurate (which they most certainly are not), this would not relieve Amtrak of its duty to answer and respond to discovery.

For instance, Plaintiff's Request to Admit No. 3 states:

Prior to February 2, 1994, the Defendant AMTRAK undertook no efforts to install automatic gates or flashing lights at the Millsdale Road Crossing.

While this appears to be a straight-forward and appropriate Request to Admit, Amtrak responds with its stock answer (that it employs in answering – or in refusing to answer – all of Plaintiff's Requests to Admit):

Defendant states that the Plaintiff's decedent had

---

[11] Plaintiff maintains that these arguments – or defenses – do not apply to this case, because there was no installation of a luminous flashing signal or crossing gate device, or federal fund participation of safety devices, at the high-speed Millsdale Road crossing at the time of the accident.   However, these are factual issues that need not be resolved at this stage of the litigation.

adequate warning and notice of the approach of Train No. 303 to Millsdale Road on February 2, 1994, in sufficient time to avoid the collision if he had taken the appropriate action in response to such warnings and notice of the approaching train. Defendant denies that the absence of automatic lights or gates on Millsdale Road on February 2, 1994, in any way caused or contributed to cause the Plaintiff's decedents' failure to take the appropriate action in response to such warning and notice of the approaching train. Accordingly, Defendant Amtrak objects to this request on the grounds of relevancy (Federal Rule 401, 402, 403) because it seeks neither the discovery of admissible evidence nor is it reasonably calculated to lead to the discovery of admissible evidence (Rule 26(b)(1)).

Amtrak refuses to answer the Request to Admit and, instead, articulates its *defense* to the underlying cause of action. However, based on the liberal discovery rules, Amtrak must respond, and save its defenses for later proceedings.[12] In other words, if

---

[12] The Court has reviewed the 27 Interrogatories, and all the Requests to Admit, that Amtrak has failed to satisfactorily answer. Without going into the details of each and every discovery request, the Court notes that Plaintiff's discovery requests seek relevant, and non-privileged, information under the liberal discovery rules. Accordingly, Amtrak is ordered to respond. Furthermore, although Amtrak contends that certain information requested by Plaintiff in Interrogatories No. 6, 7, 8 and 9 is available as a matter of public record from the Federal Railroad Administration, this does not relieve Amtrak of its duty to provide the information to Plaintiff. *See United States v. 58.16 Acres of Land*, 66 F.R.D. 570, 573 (E.D. Ill. 1975) ("Generally an interrogatory is proper although the information sought is equally available to both parties."). In addition, Amtrak's answer to Plaintiff's Request to Admit No. 1 is particularly insufficient, as Plaintiff asks whether Amtrak *was aware* of any instance when the ICC denied any railroad's request

(continued...)

Amtrak is so confident that it has no duty to provide adequate warning devices at its crossings, then it should have no hesitation in answering Plaintiff's discovery, even if that means, for instance, that it undertook no efforts to install automatic gates or flashing lights at the Millsdale Road Crossing before the date of the accident. Amtrak – at a later proceeding – would, then, merely argue that it undertook no efforts to install certain devices, because it had no legal duty to provide such devices.

The Court does not find it necessary to expend additional time in going through each and every one of Plaintiff's Interrogatories and Requests to Admit, and explain how Amtrak's responses (which are largely rote and unresponsive) are insufficient. Amtrak now knows that all of its responses have been deemed wholly inadequate. Amtrak is ordered to respond to Plaintiff's discovery, and save its

---

[12](...continued)
to install automatic warning gates at a public crossing in which trains were permitted to travel at speeds up to 79 miles per hour. Amtrak's response, that this information is obtainable by Plaintiff from sources other than Amtrak which are more convenient, less burdensome, and less expensive, is not an adequate response. Plaintiff asks whether Amtrak "was aware", and, therefore, seeks to determine Amtrak's knowledge. Consequently, Amtrak cannot "pass the buck" to other sources. Finally, in each and every instance where Amtrak refuses to answer a Request to Admit by arguing that Plaintiff's statements "are vague, ambiguous, and fundamentally do not make sense" or "are conclusion[s] of law", the Court finds this not to be the case, and Amtrak is ordered to respond.

defenses – whatever they may be – for later proceedings.[13]

## CONCLUSION

For the reasons set forth above, Plaintiff's Rule 36 and 37 Motions to Strike Objections and Compel Answers to Requests to Admit and Interrogatories are granted. Defendant Amtrak's Motion for a Protective Order is denied.

IT IS THEREFORE ORDERED that:

Plaintiff's Rule 36 and 37 Motions to Strike Objections and Compel Answers be, and the same hereby are, GRANTED.

IT IS ALSO ORDERED that:

Defendant's Motion for a Protective Order be, and the same hereby

---

[13] One last point is worth mentioning. Amtrak continually asserts that Plaintiff's discovery requests "are predicated upon the Plaintiff's erroneous contention that Amtrak has a legal duty to have a program, a policy and/or people within its organization whose duty it was/is to evaluate crossings across the country and to upgrade each such crossing by installing active warning devices." (Amtrak's Response at 5.) At this stage of the litigation (discovery disputes), whether this is true or not, is irrelevant. As discussed *supra*, under Illinois law, a railroad, such as Amtrak, has a common law duty to provide adequate safety devices at its crossings. What constitutes adequate safety devices is a factual issue. *See Magna Bank of McLean County v. Ogilvie*, 601 N.E.2d 1091, 1095 (Ill. App. Ct. 1992)("Whether a train's warning of its approach is adequate and whether particular warning devices at a rail crossing provide adequate protection are questions of fact for the jury and should be decided on a case-by-case basis.")(citations omitted). In other words, it is not for the Court to determine whether Amtrak's duty to provide adequate safety devices necessarily involves a program, etc.

is, DENIED.

Defendant is ordered to provide proper responses to Plaintiff's discovery by no later than April 13, 2001.

Dated: March 26, 2001          ENTER:

ARLANDER KEYS
United States Magistrate Judge